IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TROY M. DIXON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v.  ) | C.A. No. 17-1402 (MN) |
| ) | |
| ROBERT MAY, Warden, and ATTORNEY ) | |
| GENERAL OF THE STATE OF ) | |
| DELAWARE, ) | |
| ) | |
| Respondents.[1] ) | |

# MEMORANDUM OPINION[2]

Troy M. Dixon.  *Pro se* Petitioner.

Matthew C. Bloom, Deputy Attorney General, Delaware Department of Justice, Wilmington, DE. Attorney for Respondents.

March 31, 2021
Wilmington, Delaware

---

[1]  Warden Robert May replaced former Warden Dana Metzger, an original party to the case. *See* Fed. R. Civ. P. 25(d).

[2]  This case was re-assigned from the Honorable Gregory M. Sleet's docket to the undersigned's docket on September 20, 2018.

**NOREIKA, U.S. DISTRICT JUDGE:**

Pending before the Court is a Petition and Amended Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") filed by Petitioner Troy M. Dixon ("Petitioner"). (D.I. 1; D.I. 28). The State filed an Answer in opposition, to which Petitioner filed a Reply. (D.I. 30; D.I. 34). For the reasons discussed, the Court will deny the Petition.

I.    **BACKGROUND**

Wilmington police arrested Petitioner on November 8, 2012 in connection with a shooting. (D.I. 30 at 1). A Delaware Superior Court grand jury indicted Petitioner on charges of first degree assault; possession of a firearm during the commission of a felony ("PFDCF"); disregarding a police officer's signal; resisting arrest; and possession of a firearm by a person prohibited while, at the same time, negligently causing serious physical injury through the use of that firearm ("Serious Injury PFBPP"). (*Id.*). Petitioner later moved to sever the Serious Injury PFBPP charge from the other charges. The Superior Court granted his motion and severed his case for separate trials – an "*A* case" and a "*B* case." (*Id*. at 1-2).

The *A* case proceeded to trial on September 24, 2013. (*Id*. at 2). A Delaware Superior Court jury found Petitioner guilty of second degree assault (lesser-included offense of first degree assault), PFDCF, and resisting arrest. The Superior Court sentenced Petitioner to an aggregate sentence of twenty-one years at Level V, suspended after eighteen years for decreasing levels of supervision. Petitioner appealed, and the Delaware Supreme Court affirmed his judgment in the *A* case on October 1, 2014. *See Dixon v. State,* 2014 WL 4952360, at *1 (Del. Oct. 1, 2014). Case *A* is the basis of another habeas proceeding before this Court: *Dixon v. State*, C.A. No. 17-1403-MN.

The *B* case – which forms the basis for the instant proceeding – proceeded to trial on April 1, 2014. (D.I. 30 at 2). A Delaware Superior Court jury found Petitioner guilty of "Simple

1

PFBPP," an included offense of Serious Injury PFBPP. The Superior Court sentenced Petitioner to eight years in prison. (*Id.*). Petitioner appealed, and the Delaware Supreme Court affirmed the Superior Court's judgment in the *B* case on May 7, 2015. *See Dixon v. State*, 113 A.3d 1080 (Table), 2015 WL 2165387, at *1 (Del. May 7, 2015).

On December 2, 2014, before the appeal in the *B* case was decided, Petitioner filed a *pro se* motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") in the *A* case. (D.I. 31-2 at 6). The Superior Court appointed post-conviction counsel to represent him. The following summer, Petitioner filed a *pro se* Rule 61 motion in the *B* case. (D.I. 31-1 at 5). On September 25, 2015, post-conviction counsel filed a joint, amended Rule 61 motion under both case numbers ("amended first Rule 61 motion"). (*Id.* at 6-7). Petitioner continued to file *pro se* papers in connection with his amended first Rule 61 motion. (D.I. 30 at 3). With leave of the Superior Court, Petitioner filed a *pro se* supplement to his amended first Rule 61 motion on June 16, 2016. (D.I. 31-1 at 6-7; D.I. 31-2 at 8-9). He also filed a separate *pro se* motion for sentence correction under Superior Court Criminal Rule 35(a) ("Rule 35 motion"). (D.I. 31-1 at 7; D.I. 31-2 at 9).

On October 11, 2016, the Superior Court denied both the amended Rule 61 motion and the Rule 35 motion. *See State v. Dixon*, 2016 WL 5929251, at *5 (Del. Super. Ct. Oct. 11, 2016). Petitioner appealed, and the Delaware Supreme Court affirmed the Superior Court's judgment on June 8, 2017. *See Dixon v. State*, 2017 WL 2492565 (Del. June 8, 2017).

II. <u>**GOVERNING LEGAL PRINCIPLES**</u>

A. **The Antiterrorism and Effective Death Penalty Act of 1996**

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003).

2

Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>  (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting

3

the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989). Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51.

To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that the errors at his trial [] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). If a petitioner attempts to excuse his default on the basis of ineffective assistance of counsel, he can satisfy the prejudice component of the "cause and prejudice" standard by meeting the prejudice standard needed to establish ineffective assistance of counsel under *Strickland*. *See Holland v. Horn*, 519 F.3d 107, 120 (3d Cir. 2008).

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2006); *see Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

### C. Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits,[3] the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the state court proceeding. 28 U.S.C. § 2254(d)(1) & (2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). The deferential standard of § 2254(d) applies even when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied. *See Harrington v. Richter*, 562 U.S. 86, 98-101 (2011). As explained by the Supreme

---

[3] A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

5

Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. The mere failure to cite Supreme Court precedent does not require a finding that the decision is contrary to clearly established federal law. *See Early v. Packer*, 537 U.S. 3, 8 (2002). For instance, a decision may comport with clearly established federal law even if the decision does not demonstrate an awareness of relevant Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id*. In turn, an "unreasonable application" of clearly established federal law occurs when a state court "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of a prisoner's case." *Williams*, 529 U.S. at 413; *see also White v. Woodall*, 572 U.S. 415, 426 (2014).

Finally, when performing an inquiry under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

### III. DISCUSSION

Petitioner's timely filed Petition and Amended Petition assert the following four grounds for relief:[4] (1) the jury instruction on "included offense" constructively amended the indictment for the original offense, Serious Injury PFBPPP, in violation of Petitioner's Fifth Amendment right to due process; (2) defense counsel provided ineffective assistance by not objecting to the included offense jury instruction; (3) defense counsel provided ineffective assistance by not moving to suppress or exclude evidence of a photographic lineup; and (4) defense counsel provided ineffective assistance by not objecting to the Superior Court's jury instruction on flight.

#### A. Claim One: Constructive Amendment to Indictment

> [T]he Grand Jury indicted [Petitioner] for PFBPP in violation of Title 11, Section 1448(e)(2). Section 1448(e)(2) of the PFBPP statute ("Serious Injury PFBPP") includes an element of the crime in addition to being a person prohibited and possessing a firearm; the negligent causing of serious physical injury or death through the use of the firearm. The trial judge instructed the jury on Serious Injury PFBPP as well as the included offense, PFBPP in violation of 11 Del. C. § 1448(e)(1) ("Simple PFBPP"). Conviction for Simple PFBPP does not require proof that the defendant negligently caused serious physical injury or death.

*Dixon*, 2015 WL 2165387, at *1.

In Claim One, Petitioner contends that the jury instruction on the included offense of Simple PFBPP constructively amended the original charge for Serious Injury PFBPP in violation

---

[4] The original Petition asserts four claims. (D.I. 1). The amended Petition (D.I. 28) asserts one claim, which is the same as "Ground One" (Fifth Amendment challenge to the indictment) in the original Petition but adds a reference to 28 U.S.C. § 2254(d). In his Reply, Petitioner asserts that he "raises one claim in his amended petition" – the Fifth Amendment challenge to his indictment – and his Reply only focuses on that single claim without any discussion of his ineffective assistance of counsel allegations. (D.I. 34 at 2). Given these circumstances, it appears that Petitioner decided to abandon Claims Two, Three, and Four when he filed his amended Petition. Nevertheless, given his *pro se* status, the Court will exercise prudence and also review Claims Two, Three, and Four.

of his due process rights, because it "took away a key element of the indicted offense."[5] (D.I. 1 at 5, 15; D.I. 28 at 5). On direct appeal, after acknowledging that his argument was only reviewable for plain error due to his failure to raise an objection during the trial (D.I. 31-3 at 7), Petitioner presented the instant argument in terms of Delaware and Federal constitutional law, stating

> the trial court permitted the jury to consider the issue of guilt both with and without the element of serious injury [. . .] [which] was an impermissible broadening of the indictment. Once an indictment has been returned, its charges may not be broadened through amendment except by the grand jury itself. A constructive amendment to the indictment is a reversible error *per se* when there has been a modification at trial of the elements of the crime charged.

---

[5] Here, Simple PFBPP is referred to as an included offense of Serious PFBPP, not a lesser-included-offense, as demonstrated by the discourse between the trial judge and the State:

COURT: Well, what is the lesser included offense? It's not really a lesser included offense. It's a lesser included penalty.

STATE: Well, I think it's a lesser included offense to instruct them on the 1448(e)(1)(c) subsection, which doesn't require proof of additional facts, *i.e.*, the serious physical injury and the negligent causation between possession of the gun and the injury. And I think the Court, and I'm sure defense counsel, would be requesting that as a lesser included offense. And obviously I would not object to that, but I think –

COURT: That may be a way to handle. I thought about that also alternatively.

STATE: If they find no serious physical injury, you know, I think they should be considering that under the statute that talks about just possession the gun and being a person prohibited.

COURT: Yes. It is technically speaking, a lesser included offense because it's still 11 Del. C. 1448? Maybe it's an included offense rather than a lesser-included-offense, but with a different penalty, which, of course, the jury doesn't know that
.
STATE: Legally speaking, I think it's better to call it an included offense.

COURT: Yes.

(D.I. 34 at 15)

(D.I. 31-3 at 8).

> The Fifth Amendment to the United States Constitution, provides: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . .," U.S. Const. amend. V., "guarantees that a criminal defendant will be tried only on charges in a grand jury indictment." Therefore, only the grand jury may broaden or alter the charges in the indictment. When the government, through its presentation of evidence and/or its argument, or the district court, through its instructions to the jury, or both, broadens the bases for conviction beyond those charged in the indictment, a constructive amendment—sometimes referred to as a fatal variance—occurs. A constructive amendment is a fatal variance because the indictment is altered "to change the elements of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the indictment." Thus, a constructive amendment violates the Fifth Amendment right to be indicted by a grand jury, is error *per se*, and must be corrected on appeal even when the defendant did not preserve the issue by objection.

(D.I. 31-9 at 5-6) (internal citations omitted). The Delaware Supreme Court rejected Petitioner's argument and affirmed the Superior Court's judgment. *See Dixon*, 2015 WL 2165387, at *2.

With respect to Petitioner's contention that the jury instruction constituted a constructive amendment of the indictment under Delaware law, the Delaware Supreme Court viewed Petitioner's argument as asserting a violation of Article I § 8 of the Delaware Constitution, and denied the argument as meritless. *See Dixon,* 2015 WL 2165387, at *1-2. As for Petitioner's Fifth Amendment challenge, the Delaware Supreme Court noted that the "Fifth Amendment does not control this case," but opined that, "even if it did,"

> the Grand Jury considered all of the elements of the included offense as part of the charged offense. [Petitioner] was also on notice of the allegations to defend against at trial, and the elements of the included offense were set out in the indictment as part of the elements of the charged offense. Finally, because the elements of the included offense all appear in the indictment, the indictment was sufficient to allow [Petitioner] to plead it in the future as a bar to later prosecutions. [Petitioner] has failed to carry his burden of demonstrating plain error.

9

*Dixon*, 2015 WL 2165387, at *2.

A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Claims based on errors of state law are not cognizable on federal habeas review, and federal courts cannot re-examine state court determinations of state law issues. *See Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("[s]tate courts are the ultimate expositors of state law"); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (holding that claims based on errors of state law are not cognizable on habeas review). Because the Fifth Amendment right to a grand jury indictment does not apply to State criminal prosecutions,[6] "the legality of an amendment to an indictment is primarily a matter of state law." *United States ex. rel Wojtycha v. Hopkins*, 517 F.2d 420, 425 (3d Cir.1975). In addition, jury instructions are typically matters of state law that are not cognizable on federal habeas review. *See Estelle*, 502 U.S. at 67-68. Therefore, the Court will deny Petitioner's Delaware constitutional and Fifth Amendment challenges to the indictment as failing to assert an issue cognizable on habeas review.

Nevertheless, to the extent Petitioner argues that the jury instruction on the included offense Simple PFBPP violated his right to due process because it deprived him of notice of the offense charged, the Court concludes that Petitioner has presented the Court with a federal due process issue that is cognizable on federal habeas review. *See, e.g., Wojtycha*, 517 F.2d at 425 (acknowledging that an amendment to a State indictment may raise federal due process issues). The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." U.S. Const. Amend VI. This right applies to the states through the Fourteenth Amendment. *See In re Oliver*,

---

[6] *See Apprendi v. New Jersey*, 530 U.S. 266, 272 (1994); *Hurtado v. California*, 110 U.S. 516 (1884).

10

333 U.S. 257 (1948). Consequently, a state prisoner has the right "to receive reasonable notice of the charges against him." *Coffield v. Carroll*, 2004 WL 2851801, at *5 (D. Del. Dec.1, 2004); *cf. Peters v. Kiff*, 407 U.S. 493, 496 (1972). To determine whether an indictment satisfies due process, a court must ask whether the indictment: (1) contains the elements of the offense charged; (2) provides the defendant adequate notice of the charges against which he must defend; and (3) protects against double jeopardy by enabling the defendant to plead an acquittal or conviction to bar future prosecutions for the same offense. *See Russell v. United States*, 369 U.S. 749, 763-64 (1962); *see also Wojtycha*, 517 F.2d at 425 ("Insofar as due process claims . . . the indictment [must] fairly apprise the defendant of the charges to which he was subjected and of the basic facts upon which they were founded and provide[ ] adequate protection for double jeopardy purposes").

Although the Delaware Supreme Court did not reference the Sixth Amendment or relevant Supreme Court precedent when denying Petitioner's constructive amendment/deprivation of notice challenge to his indictment, the rationale the Delaware Supreme Court employed when rejecting Petitioner's argument demonstrates that it considered due process/notice implications the jury instruction may have had on the indictment. Therefore, the Court will review the Delaware Supreme Court's decision under § 2254(d)(1).

The indictment stated:

> **POSSSESSION, PURCHASE, OWN OR CONTROL A FIREARM BY A PERSON PROHIBITED**, in violation of Title 11, Section 1448(e ) (2) of the Delaware Code.
>
> [Petitioner], on or about the 8th day of November 2012, in the County of New Castle, State of Delaware, did knowingly and unlawfully possess, purchase, own or control a firearm, as defined under Title 11, Section 222 of the Delaware Code of 1974, as amended, after having been convicted of a violent felony in Case Number 0011003432, in the Superior Court of the State of Delaware, in and for New Castle County on or about April 22, 2003, to the charge of Trafficking Cocaine, and, while in possession or

11

> control of the firearm, did negligently cause serious physical injury to Aaron Summers with the firearm.

(D.I. 34-1 at 13). The jury instruction at issue stated:

> In such a case or in the event you are at an impasse and are unable to reach a unanimous verdict on the charge of possession, own, or control of a firearm by a person prohibited, the charged offense, then you may go on to consider the included offense of possession, own, or control of a firearm.
>
>     *    *    *
>
> The essential difference between possession, own, or control of a firearm by a person prohibited, the included offense, is that negligent causation of serious physical injury, as that term has been defined for you, is not an element of the included offense. Unlike the charged offense, the State is not required to prove the existence of this element in the included offense.

(D.I. 31-4 at 108).

To summarize, the indictment charged Petitioner with possession of a firearm by a person prohibited under 11 Del. Code § 1448(a)(2) subject to a sentence enhancement under 11 Del. Code § 1448(a)(e)(2), referenced here as Serious PFBPP, which requires proof that the defendant was a person prohibited who negligently caused serious physical injury to the victim with a firearm. The jury was instructed on both Serious PFBPP and Simple PFBPP, where Simple PFBPP is Serious PFBPP minus the requirement of negligently causing serious physical injury or death. All of the elements of the included offense – Simple PFBPP – were set out in the indictment as part of the charged offense – Serious Injury PFBPP. The indictment also included the date and location of the offense and the specific prior conviction that rendered Petitioner a person prohibited. The included offense instruction did not make any substantive change to the indictment. Therefore, the included offense instruction did not alter the fact that the indictment provided Petitioner with notice that he may be charged with Simple PFBPP, nor did it alter the fact that the indictment was sufficient to allow Petitioner to plead it in the future as a bar to later prosecutions.

Given these circumstances, the Court concludes that the included offense jury instruction did not constructively amend the indictment in violation of Petitioner's due process right to notice of the charges against him. The Delaware Supreme Court reached the same conclusion by engaging in an analysis mirroring the one articulated in *Russell* and utilized by this Court. Therefore, the Court will deny Claim One, because the Delaware Supreme Court's holding was not contrary to, or an unreasonable application of, the governing clearly established Federal law.

### B.   Claims Two, Three, and Four:  Ineffective Assistance of Counsel

In Claim Two, Petitioner contends that trial counsel provided ineffective assistance by failing to object to the included offense instruction for Simple PFBPP. In Claim Three, Petitioner asserts that trial counsel was ineffective for not moving to suppress or exclude evidence of a photographic lineup. Finally, in Claim Four, Petitioner alleges that trial counsel should have objected to the Superior Court's jury instruction on flight.

The first step of the Court's inquiry is to determine if Petitioner exhausted state remedies for these three claims. Petitioner presented Claims Two, Three, and Four in his initial *pro se* Rule 61 motion. Although appointed post-conviction counsel identified the instant three claims in the amended Rule 61 motion he filed with the Superior Court, post-conviction counsel provided thorough reasons as to why he believed the three claims lacked merit. The Superior Court reviewed Petitioner's *pro se* claims and appointed post-conviction counsel's amended Rule 61 motion, and found that the "contentions not addressed by [Petitioner's] appointed post-conviction counsel are without merit for the reasons well stated in [Petitioner's] Amended Motion for Postconviction Relief." *Dixon*, 2016 WL 5929251, at *3. The Superior Court also denied the sole ineffective assistance of counsel claim (not raised in this proceeding) that post-conviction counsel advocated for in the amended Rule 61 motion. *Id*. Appointed post-conviction counsel filed a post-conviction appeal, and the post-conviction appellate brief did include any reference to the instant

13

three claims. (*See* D.I. 31-11). After the Delaware Supreme Court affirmed the denial of his amended Rule 61 motion, Petitioner filed a second *pro se* Rule 61 motion, but he filed it with respect to the *A* case only (this proceeding involves the *B* case) and he did not assert Claims Two, Three, or Four. (*See* D.I. 30-1, at 3).

The foregoing record demonstrates that Petitioner did not exhaust state remedies for Claims Two, Three, and Four, because he did not present them to the Delaware Supreme Court on post-conviction appeal. At this juncture, any attempt by Petitioner to raise these three claims in a new Rule 61 motion would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1). *See Kostyshyn v. Metzger*, 2018 WL 1383237, at *7 (D. Del. Mar. 19, 2018). Although Rule 61(i)(1) provides for an exception to the one-year time limitation if the untimely Rule 61 motion "asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final," no such right is implicated in the instant arguments. Similarly, the exceptions to Rule 61(i)(1)'s time-bar contained in Rule 61(i)(5) and (d)(2) do not apply to Petitioner's case, because he does not allege actual innocence, lack of jurisdiction, or that a new rule of constitutional law applies to the instant arguments. Given these circumstances, Claims Two, Three, and Four are procedurally defaulted, and the Court cannot review their merits absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claims are not reviewed.

Petitioner contends that he defaulted the three claims because post-conviction counsel failed to include them in his amended Rule 61 motion. To the extent this allegation is an attempt to demonstrate cause for his default under *Martinez v. Ryan*, 566 U.S. 1, 16-17 (2012), the attempt is unavailing. In *Martinez,* the Supreme Court held that inadequate assistance or the absence of counsel during an initial-review state collateral proceeding may establish cause for a petitioner's

14

procedural default of a claim of ineffective assistance of trial counsel. *Id*. at 12, 16-17. The Third Circuit recently explained the application of *Martinez* in habeas cases:

> *Martinez* recognizes a narrow exception to the doctrine of procedural default: "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." This exception is available to a petitioner who can show that: 1) his procedurally defaulted ineffective assistance of trial counsel claim has "some merit," and that 2) his state-post conviction counsel was "ineffective under the standards of *Strickland v. Washington*."

*Workman v. Sup't Albion SCI*, 915 F.3d 928, 937 (3d Cir. 2019). "To demonstrate that his claim has some merit, a petitioner must 'show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" *Id*. at 938 (quoting *Miller-El*, 537 U.S. at 336). To demonstrate that post-conviction counsel's ineffectiveness caused the procedural default, a petitioner must show that post-conviction counsel's performance was deficient under the first prong of the *Strickland* standard, *i.e.* "that his state post-conviction counsel's performance fell below an objective standard of reasonableness."[7] *Workman*, 915 F.3d at 941.

---

[7] In *Strickland*, the Supreme Court articulated a two-pronged standard for establishing ineffective assistance. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* A petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). In the context of a guilty plea, a petitioner satisfies *Strickland*'s prejudice prong by demonstrating that, but for counsel's error, there is a reasonable probability that he would have insisted on proceeding to trial instead of pleading guilty. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). A court can choose to address the

15

Here, *Martinez* does not excuse Petitioner's default of Claims Two, Three, and Four, because the default did not occur at the initial-review collateral proceeding. Rather, the default occurred when the claims were not raised on post-conviction appeal. Although Petitioner's post-conviction counsel determined that Claims Two, Three, and Four did not have merit and did not advocate for them in the amended Rule 61 motion, post-conviction counsel included the reasons for his determination in the amended Rule 61 motion that he filed with the Superior Court. In turn, the Superior Court reviewed the instant three claims as presented in both Petitioner's original *pro se* Rule 61 motion and the counseled amended Rule 61 motion, and found the claims to be "without merit for the reasons well stated in [Petitioner's] Amended Motion For Postconviction Relief." (D.I. 31-11). Since the Superior Court reviewed and denied Claims Two, Three, and Four on the merits, Petitioner's failure to exhaust the claims occurred at the post-conviction appeal level. Thus, his default is not excused under *Martinez*.[8]

---

prejudice prong before the deficient performance prong, and reject an ineffective assistance of counsel claim solely on the ground that the defendant was not prejudiced. *See Strickland,* 466 U.S. at 698. Finally, although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

[8] Even if the *Martinez* rule should be liberally interpreted as applying to this situation and, particularly, to a post-conviction attorney's failure to raise claims on post-conviction appeal, the Court would not excuse Petitioner's default because he has failed to demonstrate that these Claims have "some merit." First, with respect to Claim Two, the Court has already concluded that the included offense instruction did not deprive Petitioner of his due process rights. Therefore, trial counsel did not provide ineffective assistance by failing to raise a meritless objection to the instruction. As for Claims Three and Four, Petitioner restates the ineffective assistance of trial counsel arguments he presented in his initial *pro se* Rule 61 motion without providing anything to demonstrate that these two allegations have some merit. When Petitioner's instant allegations are viewed in context with the explanation provided in the counseled amended Rule 61 motion (D.I. 31-20 at 2) and the Superior Court decision denying his first Rule 61 motion, the Court cannot conclude that they have "some merit." Moreover, Petitioner's summary and conclusory assertion that post-conviction counsel erred by not presenting these allegations on post-conviction appeal does not satisfy his burden to demonstrate that post-conviction counsel's representation was objectively unreasonable. Significantly, this is not a case in which post-

16

Petitioner does not provide any other cause for his default of Claims Two, Three, and Four. In the absence of cause, the Court will not address the issue of prejudice. Additionally, Petitioner has not satisfied the miscarriage of justice exception to the procedural default doctrine because he has not provided new reliable evidence of his actual innocence. Accordingly, the Court will deny Claims Two, Three, and Four as procedurally barred from habeas review.

## V.    CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

The Court has concluded that the instant Petition fails to warrant federal habeas relief, and is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the Court will not issue a certificate of appealability.

---

conviction counsel wholly failed to raise any claims of ineffective assistance of counsel. Rather, post-conviction counsel included Claims Two, Three, and Four in the amended Rule 61 motion along with his reasons for finding them meritless, and Petitioner has failed to overcome the presumption that counsel made a reasonable strategic decision not to pursue these allegations on post-conviction appeal.

## VI. CONCLUSION

For the reasons stated, the instant Petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability. An appropriate Order shall issue.